Fredric Cohen (IL State Bar No. 6198606) (to apply *pro hac vice*)
E-Mail: Fredric.Cohen@chengcohen.com
Danielle Kays (IL State Bar No. 6284321) (to apply *pro hac vice*)
E-mail: Danielle.Kays@chengcohen.com
CHENG COHEN LLC
311 N. Aberdeen, Suite 400
Chicago, Illinois 60607
Telephone: (312) 243-1701

David M. Andersen (State Bar No. 25309)
E-mail: david.andersen@bacal.group.com
Bacal Law Group, P.C.
6991 East Camelback Road, Suite D-102
Scottsdale, Arizona 85251
Telephone: (480) 245-6230

Attorneys for Plaintiff
BYRIDER FRANCHISING, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BYRIDER FRANCHISING, INC., and Indiana corporation<br><br>Plaintiff,<br><br>vs.<br><br>ARIZONA CLASSIC AUTO & FINANCE CORPORATION, an Arizona corporation; BARTOLINI FINANCE CORPORATION, an Arizona corporation; and ROBERT BARTOLONI, an individual<br><br>Defendants. | No.  CV 10-1497<br><br>**Complaint for Injunctive Relief** |

Plaintiff, Byrider Franchising, Inc. ("Byrider"), for its Complaint for Injunctive Relief against defendants Arizona Classic Auto & Finance Corporation, Bartolini Finance Corporation and Robert Bartolini, states as follows:

## THE PARTIES

1. Byrider is a corporation organized and existing under the laws of the state of Indiana, with its principal place of business in Carmel, Indiana.

2. Defendant Arizona Classic Auto & Finance Corporation ("ACAFC") is a corporation organized and existing under the laws of the state of Arizona, with its principal place of business in Arizona.

3. Defendant Bartolini Finance Corporation ("BFC") is a corporation organized and existing under the laws of the state of Arizona, with its principal place of business in Arizona.

4. Defendant Robert Bartolini is a citizen and resident of the State of Arizona.

## JURISDICTION AND VENUE

5. The Court has original subject matter jurisdiction of this action under 28 U.S.C. §§ 1331, 1338 and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.  The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that defendants reside in this judicial district.

## BYRIDER'S SYSTEM, REGISTERED TRADE AND SERVICE MARKS

7. Byrider is the franchisor of the J.D. Byrider brand of 'buy here/pay here' businesses operated across the country.

8. Byrider was a leader in innovating and developing a 'buy here/pay here' used car business model enabling credit challenged persons to acquire the transportation they need to get to work and lead fulfilling and productive lives.

9. Byrider grants franchises to qualified persons to operate businesses which offer used vehicles for sale through a sales division, together with financing services in connection with such sales through a finance division.

10. Byrider has developed a system (the "J.D. Byrider System") for establishing and operating a business offering used vehicles for sale and related financing.

11. The J.D. Byrider System includes use of the "J.D. Byrider" name and marks, "CNAC Carnow Acceptance" name and marks, J.D. Byrider proprietary computer software, confidential operating procedures, and methods and techniques for inventory and cost control, collections, record keeping, accounting and reporting, personnel management, purchasing, sales promotion, marketing and advertising.

12. Byrider has registered certain of its trade names, trademarks, and service marks (collectively, the "Byrider Marks"), including the following marks registered on the Principal Register of the United States Patent and Trademark Office:

| Mark | U.S. Reg. No. | Reg. Date |
|---|---|---|
| [J.D. BYRIDER logo] | 1,986,354 | July, 9, 1996 |
| J.D. BYRIDER | 2,227,947 | Mar. 2, 1999 |
| J.D. BYRIDER | 2,536,326 | Feb. 5, 2002 |

| Mark | U.S. Reg. No. | Reg. Date |
|---|---|---|
| CNAC CarNow Acceptance Company | 1,536,757 | April 25, 1989 |
| CNAC – CARNOW ACCEPTANCE COMPANY | 1,839,624 | June 14, 1994 |

13. These federal registrations, which are valid and subsisting, continue in full force and effect and are incontestable under the provisions of 15 U.S.C. § 1065.

14. The Byrider Marks are inherently distinctive, and, to the extent necessary, have acquired secondary meaning among the relevant consuming public.

15. Byrider has continuously used the Byrider Marks in interstate commerce in connection with the promotion, sale and licensing of J.D. Byrider used-vehicle sales and financing businesses throughout the United States.

16. Byrider and its authorized franchisees have extensively used the Byrider Marks in interstate commerce in connection with the advertisement, promotion and sale of the used-vehicle sales and financing services offered by J.D. Byrider businesses throughout the United States.

17. Byrider and its authorized franchisees use the Byrider Marks as trademarks in commerce to identity the used-vehicle sales and financing services offered by Byrider and its authorized franchisees and to distinguish them from other businesses offering used-vehicle sales and financing, other similar business operations, and the services they offer.

18. The used-vehicle sales and financing services offered by Byrider and its authorized franchisees under the Byrider Marks have met with widespread public approval and have established demand and goodwill among consumers throughout the United States.

. . .

**DEFENDANTS' WRONGFUL CONDUCT**

19. On April 9, 1998, Byrider granted defendants a franchise to establish and operate a Byrider business in Delray Beach, Florida under the terms and conditions of a written franchise agreement.

20. On January 15, 2002, Byrider and defendants renewed their franchise agreement for a seven (7) year term.

21. On January 15, 2009, Byrider and defendants again renewed their franchise agreement for an additional seven (7) year term pursuant to a written Second Renewal Franchise Agreement ("Franchise Agreement").  (A true and correct copy of the Franchise Agreement, including the amendments and related agreements thereto, is attached hereto as Exhibit A).

22. In connection with the Franchise Agreement, defendant BFC entered into a Co-Franchisee Agreement pursuant to which BFC agreed to be bound by the terms of the Franchise Agreement.

23. In connection with the Franchise Agreement, defendant Robert Bartolini executed a written Personal Guarantee and Assumption of Franchisee's Obligations, by which he personally guaranteed performance and payment of all obligations under the Franchise Agreement and agreed to be personally bound by, and liable for the breach of, each and every provision of the Franchise Agreement.

24. On May 10, 2010, Byrider terminated the Franchise Agreement for cause based on defendants' repeated failure to pay amounts due and owing thereunder and failure to cure their defaults after receiving written notice of defaults and demand for cure.

25. Under § 17.1 of the Franchise Agreement, defendants were obligated, upon termination of the Franchise Agreement, to perform certain post-termination obligations, including, without limitation, to immediately cease using any of the J.D. Byrider Marks, to promptly return to Byrider the operations manual and other confidential material including, without limitation, all computer equipment including, the Byrider computer software, to

maintain confidentiality of all proprietary information furnished by Byrider, to cancel all telephone listings, numbers and directory advertising, and to immediately make all alterations to the building facilities and exterior signs at the business location to distinguish them from the appearance and identity of a J.D. Byrider business. (*See* Ex. A, § 17.1).

26. Defendants specifically agreed to comply with all restrictive covenants set forth in the Franchise Agreement including their post-termination covenant not to compete set forth in § 18.2 of the Franchise Agreement.

27. Section 18.2 of the Franchise Agreement provides:

> The Franchisee will not, for a period of twenty-four (24) months after the expiration or termination of this Agreement, or the termination of any Successor Franchise Agreement, on its own account or as a proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, advisor or consultant, or in any other capacity for any other person, firm, entity, partnership or corporation, own, operate, lease, franchise, conduct, engage in, be connected with, have any interest in or assist any person or entity engaged in any business which was conducted by the Business which is located within (A) the Designated Marketing Area, as that term is defined by ACNielsen Corporation, for the area in which the Business is located or (B) within a radius of five (5) miles of the Business, or within a radius of five (5) miles of any other business using the System whether franchised or owned by the Company.

(*See* Ex. A, § 18.2).

28. Pursuant to § 20.12 of the Franchise Agreement, the prevailing party in a suit, action or proceeding to enforce any term or provision of the Franchise Agreement shall be entitled to recover from the losing party reasonable attorneys' fees in addition to costs or disbursements provided by law.

29. Since the termination of the Franchise Agreement, defendants have failed to perform their post-termination obligations under the Franchise Agreement and have continued to use the Byrider name and Byrider Marks and continue to use the J.D. Byrider System to operate a competitive 'buy here/pay here' business without authorization from Byrider.

30. Byrider has fully performed all of its obligations under the Franchise Agreement.

# COUNT I

## LANHAM ACT - TRADEMARK INFRINGEMENT

31. Byrider repeats and realleges ¶¶ 1 through 30 as and for this ¶ 31, as if fully set forth herein.

32. Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of a reproduction, counterfeit, copy, or colorable imitation of the Byrider Marks, and defendants' sale, offering for sale, distribution or advertising of goods and services under the Byrider Marks, or any designs similar thereto, is likely to cause confusion or mistake or to deceive the public in violation of 15 U.S.C. § 1114(1).

33. Defendants have actual notice of their violation and infringement of the Byrider Marks and constructive notice of Byrider's rights in the Byrider Marks and the registrations thereof pursuant to 15 U.S.C. § 1072.

34. Defendants' continued infringement is willful and deliberate.

35. As a direct and proximate result of defendants' infringement, Byrider has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

36. Byrider has no adequate remedy at law because the Byrider Marks are unique and represent to the public Byrider's identity, reputation, and goodwill, such that damages alone cannot fully compensate Byrider for defendants' misconduct.

37. Unless enjoined by the Court, defendants will continue to use and infringe the Byrider Marks, to Byrider's irreparable injury.

38. This threat of future injury to Byrider's business identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Byrider Marks, and to ameliorate and mitigate Byrider's injury.

. . .

. . .

# COUNT II

## LANHAM ACT - UNFAIR COMPETITION

39. Byrider repeats and realleges ¶¶ 1 through 38 as and for this ¶ 39, as if fully set forth herein.

40. Defendants' acts, practices, and conduct constitute unfair competition, false designation of origin, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or to cause mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristics, qualities, or geographic origin of the parties' goods, services and commercial activities, all in violation of 15 U.S.C. § 1125(a).

41. As a direct and proximate result of defendants' unfair competition, Byrider has been and is likely to be substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

42. Byrider has no adequate remedy at law because the Byrider Marks are unique and represent to the public Byrider's identity, reputation, and goodwill, such that damages alone cannot fully compensate Byrider for defendants' misconduct.

43. Unless enjoined by the Court, defendants will continue to compete unfairly with Byrider, to Byrider's irreparable injury.

44. This threat of future injury to Byrider's business identity, goodwill and reputation requires injunctive relief to prevent defendants' continued unfair competition, and to ameliorate and mitigate Byrider's injury.

. . .

. . .

. . .

. . .

. . .

## COUNT III

## BREACH OF CONTRACT – POST-TERMINATION OBLIGATIONS

45. Byrider repeats and realleges ¶¶ 1 through 44 as and for this ¶ 45, as if fully set forth herein.

46. Defendants have failed and refused to perform their post-termination obligations under the Franchise Agreement, including their obligations to immediately cease using any of the J.D. Byrider Marks, to promptly return to Byrider the operations manual and other confidential material including, without limitation, all computer equipment including the Byrider computer software, to maintain confidentiality of all proprietary information furnished by Byrider, to cancel all telephone listings, numbers and directory advertising, and to immediately make all alterations to the building facilities and exterior signs at the business location to distinguish them from the appearance and identity of a J.D. Byrider business.

47. In addition, defendants' continued operation of their business constitutes a breach of their covenant not to compete under the Franchise Agreement.

48. Unless and until defendants are ordered to perform their post-termination obligations, including their covenant not to compete, Byrider is likely to be substantially injured in its businesses, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill, for which Byrider has no adequate remedy at law.

49. This threat of future injury to Byrider's business identity, goodwill, and reputation requires that defendants be ordered to perform their contractual post-termination obligations under the Franchise Agreement to prevent defendants' continued breach and to ameliorate and mitigate Byrider's injuries.

. . .

. . .

. . .

9

# PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Byrider Franchising, Inc., respectfully prays for the following relief against defendants Arizona Classic Auto & Finance Corporation, Bartolini Finance Corporation and Robert Bartolini, jointly and severally:

A.  Preliminary and permanent injunctive relief enjoining defendants, and their agents, servants and employees, and those people in active concert or participation with them, from:

   (1) Using the mark and name "J.D. Byrider" or "CNAC Carnow Acceptance," any of the Byrider Marks, or any trademark, service mark, logo or trade name that is confusingly similar to the Byrider Marks;

   (2) Otherwise infringing the Byrider Marks or using any similar designation, alone or in combination with any other components;

   (3) Passing off any of their services as those of Byrider or its authorized franchisees;

   (4) Causing likelihood of confusion or misunderstanding as to the source or sponsorship of their business or services; and

   (5) Causing likelihood of confusion or misunderstanding as to their affiliation, connection or association with Byrider and its franchisees or any of Byrider's services;

   (6) Unfairly competing with Byrider or its franchisees in any manner.

B.  Preliminary and permanent injunctive relief directing defendants, and their agents, servants and employees to fully perform their post-termination obligations, including, without limitation, their obligations to immediately cease using any of the J.D. Byrider Marks, to promptly return to Byrider the operations manual and other confidential material including, without limitation, all computer equipment including the Byrider computer software, to cancel all telephone listings, numbers and directory advertising, and to immediately make all alterations to the building facilities and exterior signs at the business location to distinguish them from the appearance and identity of a J.D. Byrider business.

C.  An order that defendants be required to promptly eliminate their advertising under the Byriders Marks or any other confusingly similar designations from all media including, but not limited to, internet websites, newspapers, flyers, coupons, promotions, signs, menus, telephone books, telephone directory

10

assistance listings and mass mailings, all at defendants' cost;

D. An Order preliminarily and permanently enjoining defendants, for a period of twenty-four (24) months, on their own account or as a proprietor, partner, investor, shareholder, director, officer, employee, principal, agent, advisor or consultant, or in any other capacity for any other person, firm, entity, partnership or corporation, from owning, operating, leasing, franchising, conducting, engaging in, being connected with, having any interest in or assisting any person or entity engaged in any business which was conducted by the defendants' former Byrider franchise which is located within (A) the Designated Marketing Area, as that term is defined by ACNielsen Corporation, for the area in which the Business is located or (B) within a radius of five (5) miles of the defendants' former Byrider franchise, or within a radius of five (5) miles of any other business using the J.D. Byrider System whether franchised or owned by the Byrider;

E. An order that defendants be required to file with the Court and to serve upon Byrider's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

F. An award of the costs and expenses, including reasonable attorneys' fees, incurred by Byrider in connection with this action as provided for by statute and the Franchise Agreement; and

G. Such other and further relief as the Court deems just and proper.

Dated: July 15, 2010                BACAL LAW GROUP, P.C.


By: /s/ David M. Andersen
    Fredric Cohen
    Danielle Kays
    David M. Andersen

    Attorneys for Plaintiff